UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**RONISHA FERGUSON**, individually and on behalf of her minor children **S.J.** and **A.J.**,

Plaintiffs,

-against-

**THE CITY OF NEW YORK; KERRYANNE GRAHAM; ALPHY CONTRERAS; LORNA MITCHELL; JACQUELINE BATISTA; KAWAN INMAN; WILLIAM KESSLEMAN; DEANNA JOHNSTON; IYEISHA WITHERSPOON; MARIANNE WHITFIELD; JANELLE COGER; MARLENE WILSON; CHAMELL WILSON; PO G. COTTO; PO HECTOR BASORA; PO RODRIGUEZ; and SGT. MEER DEEN**,

Defendants.

Case No. 21-cv-01000 (KPF)

**FIRST AMENDED COMPLAINT**

---

Plaintiffs, by their attorneys at Lansner & Kubitschek and Rickner PLLC, allege upon information, belief, and personal knowledge:

**PRELIMINARY STATEMENT**

1. Plaintiff Ronisha Ferguson ("Ferguson") brings this action for damages pursuant to 42 U.S.C. § 1983, individually and on behalf her minor children, S.J. and A.J., arising from the defendants' illegal seizure and wrongful removal and detention of infant plaintiffs from their home and from their mother, the plaintiff.

2. Without due process or just cause, individuals from the New York City Administration for Children's Services ("ACS") and the New York City Police Department ("NYPD"), acting under color of law, forcibly removed the minor Plaintiffs from plaintiff's care and custody in the middle of the night, and placed them into a foster care home where they were

neglected and abused for approximately one month before a judge found that the removal was unjustified and ordered the return of infant plaintiffs to plaintiff.

3. Defendants effectuated the removal and detention without probable cause to believe that the children were in any danger whatsoever, let alone at imminent risk of harm from their mother.

## JURISDICTION & VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, as this action seeks redress for the violation of Plaintiffs' federal constitutional rights.

5. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

6. Venue is proper for the United States District Court for the Southern District of New York because the acts and omissions described herein occurred in the Southern District.

## JURY DEMAND

7. Plaintiff respectfully demands a trial by jury on all issues alleged herein, with a total sum of damages to be determined by that jury upon a finding of Defendants' liability.

## PARTIES

8. Plaintiff RONISHA FERGUSON ("Ferguson") is and was, at all relevant times, a resident of the County of the Bronx, State of New York.

9. Plaintiff S.J. is a minor child residing with his mother, Ronisha Ferguson, in Bronx County, State of New York. Pursuant to F.R.C.P. 5.2(a)(3), S.J. is represented in this action through his legal guardian and parent, Ronisha Ferguson, and will be referred to only by the initials "S.J." to protect his privacy.

10. Plaintiff A.J. is a minor child residing with his mother, Ronisha Ferguson, in Bronx

County, State of New York. Pursuant to F.R.C.P. 5.2(a)(3), A.J. is represented in this action through his legal guardian and parent, Ronisha Ferguson, and will be referred to only by the initials "A.J." to protect his privacy.

11. Defendant CITY OF NEW YORK ("City") is a municipal corporation organized and incorporated pursuant to the laws of the State of New Yok.

12. Defendant Kerryanne Graham (hereinafter "Graham") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Graham was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

13. Defendant Alphy Contreras (hereinafter "Contreras") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Contreras was acting under color of law and within the scope of his official duties as an agent and employee of the State of New York. He is sued in his individual capacity.

14. Defendant Lorna Mitchell (hereinafter "Mitchell") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Mitchell was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

15. Defendant Jacqueline Batista (hereinafter "Batista") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Batista was acting under color of law and

within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

16. Defendant Kawan Inman (hereinafter "Inman") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Inman was acting under color of law and within the scope of his official duties as an agent and employee of the State of New York. He is sued in his individual capacity.

17. Defendant William Kesselman (hereinafter "Kesselman") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Kesselman was acting under color of law and within the scope of his official duties as an agent and employee of the State of New York. He is sued in his individual capacity.

18. Defendant Deanna Johnston (hereinafter "Johnston") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Johnston was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

19. Defendant Iyeisha Witherspoon (hereinafter "Witherspoon") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Witherspoon was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

20. Defendant Marianne Whitfield (hereinafter "Whitfield") was, at all times relevant

herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Whitfield was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

21. Defendant Janelle Coger (hereinafter "Coger") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, Coger was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

22. Defendant Marlene Wilson (hereinafter "M. Wilson") was, at all times relevant herein, an employee of the New York City Administration for Children's Services ("ACS"), an agency of Defendant City. At all times relevant herein, she was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

23. Defendant Chamell Wilson (hereinafter "C. Wilson") was, at all relevant time herein, a Deputy Director for the New York City Administration for Children's Services ("ACS"), an agency of Defendant City, and a policy-maker for the City of New York. At all times relevant herein, she was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual and official capacity.

24. Graham, Contreras, Mitchell, Batista, Inman, Kesselman, Johnston, Witherspoon, Whitfield, Coger, M. Wilson, and C. Wilson are referred to collectively as the "ACS Defendants."

25. Defendant Police Officer G. Cotto (Tax ID 928119) (hereinafter "Cotto") was, at all times relevant herein, a New York City Police Department ("NYPD") officer. At all relevant

times, he was acting under color of law and within the scope of his official duties as an agent of the State of New York. He is sued in his individual capacity.

26. Defendant Police Officer Hector Basora (Tax ID 960211) (hereinafter "Basora") was, at all times relevant herein, a New York City Police Department ("NYPD") officer. At all relevant times, he was acting under color of law and within the scope of his official duties as an agent of the State of New York. He is sued in his individual capacity.

27. Defendant Police Officer Rodriguez (Tax ID 886389) (hereinafter "Rodriguez") was, at all times relevant herein, a New York City Police Department ("NYPD") officer. At all relevant times, he was acting under color of law and within the scope of his official duties as an agent of the State of New York. He is sued in his individual capacity.

28. Defendant Sergeant Meer Deen (Tax ID 926869) (hereinafter" "Deen") was, at all times relevant herein, a New York City Police Department ("NYPD") officer. At all relevant times, he was acting under color of law and within the scope of his official duties as an agent of the State of New York. He is sued in his individual capacity.

29. Defendants Cotto, Basora, Rodriguez, and Deen are referred to collectively as the "NYPD Defendants."

30. The ACS Defendants and NYPD Defendants are referred to collectively as the "Individual Defendants."

## STATEMENT OF FACTS

31. On the morning of February 7, 2019, a caller purporting to be a staffer from S.J. and A.J.'s school called the New York State Central Register of Child Abuse and Maltreatment and reported that S.J., who was eight years old at the time, had missed a number of school days, was falling behind in his academic work, and had a "visible black and blue bruised eye," and was

wearing "dirty clothing" with "body odor."

32. The report was immediately transmitted to the New York City Administration for Children's Services ("ACS"), which did not mark the report as an emergency, meaning it did not require immediate attention.

33. A few hours later, ACS assigned Defendants Graham and Contreras to investigate the allegations under the supervision of Defendant Mitchell. All three employees would be supervised further by Defendants Batista and C. Wilson.

34. Around 3:15 in the afternoon, Graham and Contreras went to Plaintiff's home to investigate the allegations. Neither attempted to contact the informant or otherwise investigate the claims prior to the arrival at Plaintiffs' apartment.

35. Graham and Contreras spoke with plaintiff Ferguson in the hallway of Plaintiffs' apartment building, where Ferguson answered their questions and stated that S.J. and A.J. were on their way home and would arrive shortly. Defendants Graham and Contreras asked to enter and search plaintiff's apartment, and plaintiff declined.

36. Graham and Contreras waited outside the apartment, and again asked plaintiff to permit defendants to search the apartment. Once again, plaintiff declined.

37. Subsequently, defendants Graham and Contreras followed plaintiff as plaintiff exited her apartment and went outside to the bus stop to meet her sons S.J. and A.J. Defendants Graham and Contreras saw that S.J, who had a small, healing bruise under his left eye. S.J. told defendant Graham that he had incurred the injury while playing with a cat at his grandmother's house on the previous the weekend.

38. Defendants Graham and Contreras noticed, or should have noticed, that the infant plaintiffs were wearing clean clothes and displayed good hygiene.

7

39. Defendants Graham and Contreras also noticed a small scratch on A.J.'s forehead. When asked, A.J. said that he had fallen on the school bus while riding home that day, which was confirmed by the school aide who accompanied the boys home on the bus.

40. Neither ACS Defendant attempted to contact infant plaintiffs' grandmother to corroborate the explanation of S.J.'s fading bruise. Instead, Graham and Contreras called the police for assistance with their investigation.

41. Shortly thereafter, Detective Hoffman from the New York City Child Advocacy Center ("CAC") arrived at the home to assist the ACS Defendants.

42. Defendants Graham and Contreras demanded that Ferguson bring her children to the CAC, a government-funded multi-disciplinary organization that investigates child abuse allegations through medical and other assessments. Ferguson refused, believing such intervention was intrusive and unnecessary.

43. After Det. Hoffman explained the rationale for sending the children to the CAC and Ferguson declined, Hoffman advised defendants Graham and Contreras that Ferguson was within her rights to refuse the examination.

44. Hoffman then left, advising defendants Graham and Contreras that he could not lawfully interfere with parental rights by forcing Ferguson to comply with ACS.

45. After defendants Graham and Contreras left Plaintiffs' home, they conferred with their supervisors, including Defendant Mitchell. Mitchell also conferred with her superiors and colleagues, including Batista and C. Wilson, an ACS Deputy Director.

46. Despite finding no evidence whatsoever that the children were being abused or neglected by their mother, defendants Graham, Contreras, Mitchell, Batista, and C. Wilson jointly decided to effectuate an emergency removal of the children, and did so merely because Ferguson

exercised her right to refuse a search of her home and a medical evaluation of her children.

47. Plaintiff's refusal to allow government agents to search her home and examine her children does not constitute probable cause necessary to remove children from mother's care. Moreover, the ACS Defendants' personal dislike of plaintiff Ferguson because of her refusal to cooperate with their unlawful demands did not give them probable cause to remove her children in retaliation.

48. Defendants Graham, Contreras, Mitchell, Batista, and C. Wilson did not remove infant plaintiffs from plaintiff. Instead, they left for the day, and transferred the investigation of plaintiff to Emergency Children's Services ("ECS"), a division of ACS that handles after-hours and weekend emergency interventions.

49. Sometime between 3:45 and 4:30 a.m. on February 8, 2019, Defendant Inman and Kesselman, under the supervision of Defendant Whitfield, went to Plaintiff's home, accompanied by defendants Cotto, Deen, Basora, and Rodriguez, who assisted jointly effectuated the removal of infant plaintiffs from plaintiff.

50. Neither Inman, Kesselman, or Whitfield conducted any investigation into the allegations prior to removing S.J. and A.J. from their mother's care in the middle of the night.

51. During the removal, the NYPD Defendants forced their way into Plaintiffs' home, without consent or probable cause to do so. When plaintiff told the NYPD defendants to leave her home, NYPD defendants refused to leave and instead remained in the home.

52. NYPD Defendants falsely stated that there was a court order for the children's removal, though no such order existed.

53. The NYPD Defendants threatened that if plaintiff did not turn over her children to ACS, she would be arrested. Fearing further repercussions and knowing that NYPD defendants

would remain in her home until she complied, escalating the danger that she and her children faced, Ferguson eventually stopped resisting Defendants' demands to remove the children.

54. Defendants informed Ferguson that the removal would not have occurred if Ferguson had simply agreed to take her children to the CAC for a medical exam when requested.

55. Nevertheless, none of the Defendants took the children for any examination until at least February 22, 2019—fifteen days after removing the infant plaintiffs and taking them into government custody—at which time they talked to a forensic interviewer, but were not given a medical examination.

56. On February 8, 2019, after defendants had removed infant plaintiffs from plaintiff, defendant Graham spoke with infant plaintiff's older sister.

57. Their sister reported that a number of people had been at the grandmother's home over the prior weekend, including the boys' eleven and ten year old cousins, with whom the boys would often rough-house. The sister also confirmed that S.J. was, in fact, involved in an incident with the cat while they were at their grandmother's house.

58. None of the defendants attempted to contact any witness who had been present at the grandmother's home at the time S.J. was injured.

59. On February 8, the ACS case was transferred to Defendant Coger for investigation, who would be supervised by Defendant M. Wilson, who remained under the supervision of Batista.

60. Defendants Coger, M. Wilson, and Batista conducted a constitutionally inadequate investigation of the charges of child neglect, and ignored readily available exculpatory evidence.

61. Given the information available to them from the family and potential witnesses, Coger, M. Wilson, and Batista knew or should have known that there were no exigent circumstances that justified the emergency removal or continued detention of S.J. and A.J. in the

City's custody.

62. Instead, defendants Coger, M. Wilson, and Batista unnecessarily and wrongfully prolonged the plaintiff family's separation because of their personal animus toward and dislike of plaintiff Ferguson, based on her demeanor toward ACS—not because of any danger to the children in their mother's home.

63. During this period of separation, S.J. and A.J. were placed in a foster care home where they were beaten and physically abused by their foster mother.

64. Thus, in addition to the trauma of the removal itself, Defendants caused physical and emotional harm to infant plaintiffs that infant plaintiffs would not have experienced but for the unconstitutional removal of infant plaintiffs from their mother, the plaintiff.

65. Plaintiff demanded a trial on the return of her sons to her custody, which took place on February 13–14 and March 6–7, 2019.

66. At the conclusion of the trial, the Family Court judge found that S.J. and A.J. were not in danger, and ordered that Defendants immediately return S.J. and A. J. to their mother.

67. Finally, on September 12, 2019, after a trial on the merits, the Family Court dismissed all charges alleging that Ferguson had neglected her boys.

68. S.J. and A.J. have lived with their mother, without incident, their return home.

**FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983**
**DENIAL OF FAMILIAL ASSOCIATION**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT**
*Against the Individual Defendants*

69. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained herein with the same force and effect as if fully set forth below, and further allege as follows:

70. The Fourteenth Amendment to the United States Constitution prohibits the depravation of one's life, liberty, or property without due process of law.

71. This substantive right also includes the right to be free from unwanted and unreasonable government intrusion into one's family life.

72. By removing S.J. and A.J. from their mother's care without probable cause or reasonable suspicion, and in the face of exculpatory evidence, the Individual Defendants caused the children to be away from their mother, in foster care, for approximately one month.

73. During this period of time, the children were abused by the foster parent/family.

74. By virtue of the aforementioned acts by the Individual Defendants, Plaintiffs were deprived of their civil rights guaranteed under the Fourteenth Amendment to the United States Constitution to be free from unreasonable intrusion into their family life, and the Individual Defendants are liable to Plaintiff for damages under 42 U.S.C. § 1983.

75. As a result of the above unconstitutional conduct, Plaintiffs suffered physical, economic, and emotional injuries, and the Individual Defendants are liable for punitive damages.

**SECOND CLAIM FOR RELIEF – 42 U.S.C. § 1983
WARRANTLESS ENTRY
IN VIOLATION OF THE FOURTH AMENDMENT**
*Against the Individual Defendants*

76. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained herein with the same force and effect as if fully set forth below, and further allege as follows:

77. Defendants Inman, Kesselman, Cotto, Basora, Rodriguez, and Deen, acting pursuant to the instructions of defendants Graham, Contreras, Mitchell, Batista, Johnston, Witherspoon, Whitfield, and C. Wilson, entered Plaintiffs' residence without a warrant, consent, or other lawful authority, and threatened plaintiff Ferguson inside the threshold of her door, warning that they would arrest her if she did not turn over her children to the ACS Defendants.

78. By virtue of the aforementioned acts by the Individual Defendants, Plaintiffs were deprived of their civil rights guaranteed under the Fourth Amendment to the United States

Constitution to be free from unreasonable or unlawful searches and seizures, and the Individual Defendants are liable to Plaintiff for damages under 42 U.S.C. § 1983.

79. As a result of the above unconstitutional conduct, Plaintiffs suffered physical, economic, and emotional injuries, and the Individual Defendants are liable for punitive damages.

**THIRD CLAIM FOR RELIEF – 42 U.S.C. § 1983**
**UNLAWFUL SEIZURE/DETENTION**
**IN VIOLATION OF THE FOURTH AMENDMENT**
*Against the Individual Defendants*

80. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained herein with the same force and effect as if fully set forth below, and further allege as follows:

81. The Individual Defendants seized Ferguson's minor children without a court order, consent, or other lawful authority.

82. In addition to the removal being patently unconstitutional, the manner in which the Individual Defendants effectuated the seizure—that is, removing elementary-age children from their home in the middle of the night without cause or legal justification—further violated Plaintiffs' right to be free from unreasonable searches and seizures.

83. Furthermore, in the absence of probable cause or reasonable suspicion that the children were in imminent danger, Defendants' prolonged and unnecessary detention of the minor Plaintiffs constitutes unlawful imprisonment/detention of the children.

84. That by virtue of the aforementioned acts by the Individual Defendants, Plaintiffs were deprived of their civil rights guaranteed under the Fourth Amendment to the United States Constitution to be free from unreasonable or unlawful searches and seizures, and the Individual Defendants are liable to Plaintiffs for damages under 42 U.S.C. § 1983.

85. As a result of the above unconstitutional conduct, Plaintiffs suffered physical, economic, and emotional injuries, and the Individual Defendants are liable for punitive damages.

## FOURTH CLAIM FOR RELIEF – 42 U.S.C. § 1983
## PROSECUTION WITHOUT PROBABLE CAUSE
## IN VIOLATION OF THE FOURTEENTH AMENDMENT
*Against the Individual Defendants*

86. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained herein with the same force and effect as if fully set forth below, and further allege as follows:

87. By commencing and continuing child abuse proceedings against Ferguson in the Family Court, the Individual Defendants prosecuted Plaintiff Ferguson maliciously and without probable cause, in violation of Plaintiff Ferguson's constitutional due process rights.

88. The Family Court prosecution resolved in a complete dismissal of the charges, in favor of Plaintiff Ferguson.

89. That by virtue of the aforementioned acts by the Individual Defendants, Plaintiffs were deprived of their civil rights guaranteed under the Fourth and Fourteenth Amendment to the United States Constitution to be free from prosecution without probable cause, and the Individual Defendants are liable to Plaintiff for damages under 42 U.S.C. § 1983.

90. As a result of the above unconstitutional conduct, Plaintiffs suffered physical, economic, and emotional injuries, and the Individual Defendants are liable for punitive damages.

## FIFTH CLAIM FOR RELIEF – 42 U.S.C. § 1983
## *MONELL* LIABILITY
*Against the City of New York*

91. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained herein with the same force and effect as if fully set forth below, and further allege as follows:

92. During the year 2019 to the present, Defendant City of New York engaged in, ratified, and otherwise perpetuated unconstitutional policies and practices, including:

    a. Removing and detaining children from their parents without seeking or obtaining

court orders, in non-exigent circumstances, based solely or primarily upon the parents' refusal to cooperate in the City's investigation of the parents;

b. Removing and detaining children from parents without seeking or obtaining court orders in situations where there was ample time to obtain court orders;

c. Prolonging the detention of children who had been removed from their parents on emergency bases after discovering new facts showing that the parents were fit to care for the children;

d. Prolonging the detention of children who had been removed from their parents on emergency bases after the emergency ended; and

e. Removing and detaining children from their parents without seeking or obtaining court orders, in non-exigent circumstances, based solely or primarily on the race and/or socioeconomic status of the parents. That is, the City regularly and repeatedly treats Black and indigent parents as unfit simply because of their race and/or economic status, and therefore hyper-police their behaviors in a discriminatory manner, resulting in woefully unequal treatment of Black parents and regular interference with the lives of Black families.

93. The City's policy and/or practice that the failure of a parent to cooperate with government child abuse investigators is itself a form of child abuse or neglect, justifying the removal of the children from the parent, is an unconstitutional denial of the parent's right to raise her children free of government interference and amounts to an unconstitutional denial of the parent's right to intimate association with her children, in violation of the First, Fourth, and Fourteenth Amendments.

94. The City's policy and/or practice of removing children from their parents in non-

exigent circumstances, without providing procedural due process of law to the parents or the children, is an unconstitutional denial of the right of the parents and children to due process, including notice and a hearing prior to the removal.

95. The City's policy and/or practice of removing children without court orders when there is ample time to seek court orders is an unconstitutional denial of the children's and parents' right to be free from unreasonable searches and seizures, as well as the procedural due process right to familial association without government intrusion.

96. The City's policy and/or practice of wrongfully prolonging the detention of children who have been removed from their parents when probable cause to remove the children has dissipated is an unconstitutional denial of the children's and parents' right to substantive due process of law and a violation of the children's and parents' right to intimate association, in violation of the First, Fourth and Fourteenth Amendments.

97. Acting pursuant to said policies and practices, defendants Graham, Contreras, Inman, Kesselman, Mitchell, Batista, C. Wilson, Johnston, Witherspoon, and Whitfield removed and detained infant plaintiffs from the custody of adult plaintiff, and interfered with the relationship between adult plaintiff and infant plaintiffs, without probable cause and without due process of law.

98. The City's policy and/or practice of removing and detaining children from their parents without seeking or obtaining court orders, in non-exigent circumstances, based solely or primarily on the race and/or socioeconomic status of the parents, and applying neglect and abuse laws in a discriminatory manner against families of color, the City regularly and repeatedly violates the Equal Protection rights of these families, as guaranteed by the Fourteenth Amendment, and does so in order to control and police the structures and experiences of Black life.

99. Acting pursuant to said policies and practices, the ACS Defendants unlawfully detained S.J. and A.J. from the custody of Plaintiff Ferguson, and interfered with the relationship between the children and their mother, without probable cause and without due process of law.

100. Said policies and/or practices, and the removal and detention of the minor children, constituted an unlawful seizure of A.J. and S.J., in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Said policies and/or practices, and their implementation, were gross deviations from acceptable professional conduct.

101. Said policies and/or practices, and the consequent removal and detention of the minor children, constituted an unlawful interference with Ferguson's liberty interest in the care and custody of her children, as well as her right of intimate association with her children, in violation of the First and Fourteenth Amendments to the United States Constitution.

102. Said policies and/or practices, and the removal and detention of the minor children, constituted an unlawful interference with A.J. and S.J.'s liberty interest in their family, and their right to intimate association with their mother, in violation of the First and Fourteenth Amendments to the United States Constitution.

103. Said policies and/or practices, and the removal and detention of the minor children, constitutes a grossly unequal application of family and custody laws against Black parents, where similar parenting behaviors are not seen as abusive or neglectful if observed in their white counterparts, violating Plaintiffs' Equal Protection Rights under the Fourteenth Amendment.[1]

104. As a result, Ferguson suffered the loss of the custody of her children, the invasion

---

[1] *See*, *e.g.*, The Bronx Defenders, "Family Defense Advocates Urge Albany to Reform Family Regulation System," (May 23, 2021), available at bronxdefenders.org/family-defense-advocates-urge-albany-to-reform-family-regulation-system/ ("In New York, Black children make up only 15% of the children in the state but 40% of the children in the family regulation system, whereas white children make up 48% of the children across the state but only 25% of the children in the family regulation system.

of the privacy of her home and family, lost wages, and incurred expenses; while the minor children suffered a loss of liberty, loss of the care and guidance of their mother, and physical abuse by their foster family; and all three Plaintiffs suffered severe humiliation, degradation, pain, suffering, terror, and mental anguish, all of which continue to this day.

### SIXTH CLAIM FOR RELIEF – 42 U.S.C. § 1983
### *MONELL* LIABILITY
*Against the City of New York*

105. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained herein with the same force and effect as if fully set forth below, and further allege as follows:

106. Defendant City provided grossly inadequate and unprofessional training and supervision to its agents and employees regarding:

   a. investigating child abuse and neglect cases;

   b. reliance on anonymous tips;

   c. determining whether there is probable cause to believe that continuing in the care of a parent presents an imminent danger of serious harm to the child's life or health;

   d. determining whether there is sufficient time to obtain a warrant or court order before removing a child from a parent;

   e. the provision of adequate notice and an opportunity to be heard prior to, or immediately after, the removal of a child;

   f. the constitutional rights of parents and children in child abuse and neglect investigations;

   g. withdrawing child neglect charges when probable cause dissipates; and

   h. recognizing and combating implicit biases that lead the grossly unequal application of family and custody laws to parents of color, who are monitored, policed, and

prosecuted for family offenses at significantly higher rates than their white counterparts, despite no reliable statistical correlation between race and abusive or neglectful parenting.

107. Defendant City knew or should have known that their employees would confront said issues, and that, without adequate training, supervision, and appropriate discipline, would make the wrong decisions on said issues.

108. By reason of their lack of training and/or supervision, the ACS Defendants took the minor Plaintiffs into government custody on February 8, 2019, and/or ordered or approved the taking of the same into government custody, where they were *actually* abused by a foster parent.

109. By reason of their lack of training and/or supervision, the ACS Defendants detained the minors, without notice to Ferguson, without constitutionally-adequate investigation, without probable cause, and without due process of law.

110. As a result, Ferguson suffered the loss of the custody of her children, the invasion of the privacy of her home and family, lost wages, and incurred expenses; while the minor children suffered a loss of liberty, loss of the care and guidance of their mother, and physical abuse by their foster family; and all three Plaintiffs suffered severe humiliation, degradation, pain, suffering, terror, and mental anguish, all of which continue to this day.

**WHEREFORE**, Plaintiffs demand the following relief against all Defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empaneling of a jury to consider the merits of these claims;

d. Costs and interest and attorney's fees pursuant to 42 U.S.C. § 1988; and

e. Such other and further relief as this court may deem appropriate and equitable.

DATED:   New York, New York
         July 1, 2022

                                        **LANSNER & KUBITSCHEK**

                                        By:      /s/

                                        Carolyn A. Kubitschek

                                        325 Broadway, Suite 203
                                        New York, New York 10007
                                        Phone: (212) 349-0900
                                        ckubitschek@Lanskub.com

                                        **Rickner PLLC**

                                        By:      /s/

                                          Rob Rickner
                                          Stephanie Panousieris

                                        14 Wall Street, Suite 1603
                                        New York, New York 10005
                                        Phone: (212) 300-6506
                                        Fax: (888) 390-5401

                                        *Attorneys for Plaintiffs*